UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACK CHRISTOPHER CARSWELL, | Case No. 1:22-cv-00369-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| NICHOLAS ANDERSON; TERRY HODGES; NATHAN ATKINSON; CHRISTOPHER LEFAVE; JONATHAN SALISBURY; CITY OF MERIDIAN POLICE DEPARTMENT; and BRANDON FRASIER, | |
| Defendants. | |

## INTRODUCTION

Before the Court are Defendants' Motion for Summary Judgment (Dkt. 58) and Plaintiff's Motion to Disqualify Judge (Dkt. 60). Having reviewed the record in the case, the Court finds that oral argument is unnecessary and now issues its decision. *See* Idaho Local Civ. R. 7.1. For the reasons described below, the Court will deny Plaintiff's Motion to Disqualify Judge and will grant Defendants' Motion for Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

This case arises from a traffic stop on November 7, 2021. Defendant Nicholas Anderson, an officer with the Meridian Police Department, saw an individual later identified as plaintiff Jack Christopher Carswell driving a truck with an obviously fictitious license plate. The rear plate had a vertical striped flag, an eagle, "Idaho" in red letters at the top, and no numbers. Anderson followed the truck into a Lowes parking lot and observed that it also had a fictitious front plate that read "The Three Bs." While the truck was unoccupied, Anderson approached and observed that the VIN on the dashboard was obscured with a dark piece of paper. He also realized that the rear plate had the phrases "American State National" and "Notice Private Automobile Not for Hire," which are commonly used by "sovereign citizens." *Defs.' Statement of Facts* ¶¶ 1-2, Dkt. 58-2.

Anderson watched Carswell get into the truck and leave the parking lot. Anderson followed and initiated a traffic stop. Carswell returned to the parking lot, where he stopped the truck but left the engine running. Anderson approached the vehicle on the driver's side and identified himself as a police officer. *Id.* ¶ 3-4.

The subsequent exchange is fully captured on Anderson's body camera. Anderson explained that he stopped Carswell because Carswell did not have license plates. Carswell began filming the encounter and responded, "I do have a

plate on my vehicle sir." He then asked for Anderson's name and badge number, which Anderson provided. Anderson asked Carswell to keep his hands visible. Carswell interrupted and asked what municipality he worked for. Anderson said, "I will give you one chance to do this, and if you do not do this you will be arrested for resisting and obstructing. Do you understand?" Carswell insisted that he was being peaceful and again asked about Anderson's municipality. Anderson responded that he worked for the Meridian Police Department. *Id.* ¶ 4; *Ex. A*.

Anderson then asked Carswell for his license, registration, and proof of insurance. Carswell responded, "I am not surrendering my Fourth and Fifth Amendment secured protected rights." He did not provide the documents but pulled out blue folder that appeared to contain a script and asked several times, "What crime has been committed." Anderson replied that Carswell had no license plates on his vehicle and told him, "so, here's the deal, if you do not cooperate, you will be arrested for resisting and obstructing." Carswell continued arguing. Anderson said, "You're not going to have another chance, sir" and explained again that Carswell had been pulled over for not having any license plates. Carswell rolled up his window while saying, "You have no lawful [inaudible]." *Ex. A*. Around this time, Sergeant Terry Hodges arrived on the scene.

Carswell shifted the car into "drive." Both officers yelled, "Stop your car."

Anderson immediately opened the driver's side door and grabbed Carswell while Hodges opened the passenger door. Officer Nathan Atkinson arrived and helped the other two secure Carswell. They pulled Carswell out of the car and onto the ground. A fourth officer, Christopher LeFave, arrived. He secured Carswell's legs while the others turned Carswell on his stomach and handcuffed his hands behind his back. *Ex. A*.

Carswell told the officers that he had diaphragm paralysis, a medical condition that interfered with breathing. The officers brough Carswell to his feet and escorted him to paramedics, then to the hospital. The hospital cleared him for booking. *Id.*; *Defs.' Statement of Facts* ¶ 9, Dkt. 58-2.

The officers searched Carswell's truck in connection with the arrest. They seized the rear license plate as evidence and temporarily confiscated a firearm, holster, and ammunition based on concern that Carswell had warrants for his arrest in Georgia. Investigation by Lieutenant Brandon Frasier revealed that the warrant was for a different man with the same last name. The firearm, holster, and ammunition were returned to Carswell the day after the arrest.

Carswell was cited for fictious display of a license plate, failure to provide proof of insurance, failure to register, and operating a vehicle without a valid license. The trial court found him guilty of fictious display of a license plate and

failure to provide proof of insurance, and it dismissed the other two infractions.

Ada County Case No. CR01-21-41807. Carswell was separately cited for

misdemeanor resisting arrest and obstructing. That case was dismissed. Ada

County Case No. CR01- 21-41738.

In August 2022, Carswell filed a pro se complaint under 18 U.S.C. § 1983

against the police officers involved in his arrest and the City of Meridian police

department. After several rounds of dismissal and amendment, the Court allowed

Carswell to move forward with three claims: (a) false arrest and malicious

prosecution as to Anderson; (b) excessive force as to Anderson, Hodges, Atkinson,

and LeFave; and (c) unlawful seizure of personal property as to Anderson and

Frasier. *See* Dkt. 20. Carswell seeks $9 million in damages, based partly on injuries

he allegedly sustained and the seizure of his fictitious license plate. Discovery

commenced in October 2023.

In March 2024, Defendants filed a motion to compel discovery responses

after Carswell refused to provide information related to his alleged injuries and

preexisting medical conditions. Dkt. 44. The Court granted that motion, concluding

that Defendants' requests were "as relevant as discovery requests come"—they

directly informed the assessment of damages—and that Carswell's objections

"border[ed] on nonsensical." Dkt. 49 at 5. The Court remarked, "Ultimately, if a

plaintiff cannot play by the rules of the game—i.e., the procedural requirements that govern civil litigation— he has no right to utilize the legal system." *Id.* at 6.

The Court also ruled that Carswell had to pay reasonable attorney fees and costs incurred in bringing the motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), which requires an award of attorney fees under certain circumstances. Defendants filed a motion seeking $1,992.25 in attorney fees in July 2024. Dkt. 54. Carswell did not file a response. The Court granted the motion, concluding that the time billed and hourly rate were reasonable. Dkt. 57. Carswell appealed, and the matter is currently pending before the Ninth Circuit. Dkt. 63.

Carswell then filed the present Motion to Disqualify Judge (Dkt. 60). Around the same time, Defendants moved for summary judgment on all counts (Dkt. 58). Both motions are ripe for disposition.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims" and thereby prevent these matters "from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327

(1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Rather, the dispute must concern a material fact—one "that may affect the outcome of the case." *Id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). The burden then shifts to the non-moving party to produce evidence sufficient to support a favorable jury verdict. *Deveraux*, 263 F.3d at 1076. The non-moving party must show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. This requires directing the Court's attention "to specific, triable facts," and the Court "is not required to comb through the record to find some reason to deny a motion for summary judgment." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003).

The evidence must be viewed in the light most favorable to the non-moving

party, and Court must not make credibility findings. *Anderson*, 477 U.S. at 255. The Court, however, is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## ANALYSIS

### 1. Motion to Disqualify Judge

The Court first considers Carswell's Motion to Disqualify based on judicial bias or prejudice. A party seeking disqualification of a judge must file a "sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. The affidavit shall "state the facts and the reasons for the belief that bias or prejudice exists" and shall be made in good faith. *Id.* Only after determining the sufficiency of a § 144 affidavit must a judge reassign the motion. *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1988). A judge's adverse rulings do not alone establish prejudice or bias, nor create a reasonable question of judicial impartiality. *Liteky v. United States*, 510 U.S. 540 (1994).

Carswell's allegations of bias and prejudice center on the Court's decision to grant Defendants' motion to compel and to award attorney fees. He alleges that this was "fraud by the court" because the information sought was irrelevant and protected by HIPPA, and because the award of fees was unlawful in light of

Carswell's recognized indigency. *Pl.'s Mot. to Disqualify* at 7-8, Dkt 60. Carswell also takes issue with the Court's statement that "if a plaintiff cannot play by the rules of the game—i.e., the procedural requirements that govern civil litigation—he has no right to utilize the legal system." Dkt. 49 at 6. Carswell's ironic conclusion from this statement is that "the Laws governing this proceeding are irrelevant to [Judge Winmill]." *Pl.'s Mot. to Disqualify* at 12, Dkt 60. The rest of the affidavit details Carswell's status as a sovereign citizen beyond the jurisdiction of the Court—a somewhat curious position to take given that he is the one who filed the action. *Id.* at 1-7.

These are all disputes about the merits of the Court's ruling, not facts indicating bias or prejudice by the judge. The proper recourse is appeal—which Carswell is pursuing—not judicial disqualification. The affidavit does not describe any conduct or circumstances outside of the judicial proceedings that suggest bias or prejudice. Carswell also does not identify anything that would indicate "deep-seated favoritism or antagonism that made fair judgment impossible." *In re Focus Media, Inc.*, 378 F.3d 916, 930 (9th Cir. 2004). Therefore, there is no basis for judicial qualification, and Carswell's Motion is denied.

## 2. Motion for Summary Judgment

The Court now takes up Defendants' Motion for Summary Judgment.

Defendants seek summary judgment on all claims: (1) false arrest and malicious prosecution; (2) excessive force; and (3) unlawful seizure of property. Carswell argues that the Motion is untimely and depends on inadmissible hearsay.

### A. Timeliness

Carswell first objects that the Motion is untimely. *Pl.'s Opp'n* at 1-2, Dkt. 62. The Court's scheduling order provided that the deadline for filing dispositive motions was October 6, 2024, and the Motion was filed on October 7, 2024. It is true that this was one day later than the provided deadline. However, October 6 was a Sunday. When a motion's filing deadline lands on a Saturday, Sunday, or on a legal holiday, the period runs until the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C). Defendants' motion was therefore timely because they filed on the next open business day—Monday, October 7—consistent with Rule 6.

### B. Hearsay

Carswell also suggests that Defendants' memorandum is inadmissible hearsay. *Def.'s Opp'n* at 2, Dkt. 62. This objection misunderstands the nature of the summary judgment analysis. "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Thus, a

party need not "produce evidence in a form that would be admissible at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Carswell has not articulated any concerns with the contents of the evidence

cited by Defendants. He does not even dispute Defendants' account of the facts

beyond claiming that they are "interpretations." *Def.'s Opp'n* at 2, Dkt. 62. A

blanket hearsay objection cannot defeat a summary judgment motion. Accordingly,

the Court will now consider the Motion on the merits.

### C. False Arrest and Malicious Prosecution

Carswell first alleges that he was falsely arrested and maliciously prosecuted

merely for asking Officer Nicholas Anderson "to identify himself." *Sec. Am.*

*Compl.* at 2, Dkt. 16. Defendants seek summary judgment because Anderson (1)

had probable cause for the arrest, and (2) is entitled to qualified immunity.

Section 1983 claims for false arrest are rooted in the Fourth Amendment's

protection against unreasonable seizures. To prevail on his claim, Carswell must

show that officer arrested him without a valid warrant and without probable cause.

*Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

Conversely, summary judgment for defendants is appropriate if the undisputed

facts establish that the officers had probable cause.

Probable cause exists "if the available facts suggest a 'fair probability' that

the suspect has committed a crime." *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). This is a common-sense standard that considers the totality of the circumstances—"factual and practical considerations of everyday life on which reasonable [persons], not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 168 (1949). The severity of the crime is irrelevant: "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). An officer's subjective beliefs are also irrelevant; the question is whether a reasonable officer in the same situation would possess probable cause for an arrest. *Whren v. United States*, 517 U.S. 806, 811-813 (1996).

In the present matter, Officer Anderson had probable cause to believe that Carswell was resisting or obstructing a public officer. Idaho law provides that an individual who "wilfully resists, delays, or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office" is guilty of a misdemeanor punishable by up to one year in prison. Idaho Code § 18-705. Anderson was conducting a lawful stop based on Carswell's display of a fictitious license plate. *See* Idaho Code § 45-456(3) (prohibiting display or possession of a fictitious license plate). As Anderson attempted to investigate, Carswell refused to

provide basic information like hist proof of insurance, registration, and driver's license. He was legally required to disclose these documents, and this alone created probable cause for arrest. *See State v. George*, 905 P.3d 626, 632 (Idaho 1995) (holding that an individual's refusal to produce license and registration constituted obstruction and delay of a public officer).

Moreover, a few minutes into the encounter, Carswell rolled up his car window and attempted to drive away. In addition to presenting a serious threat to officer safety, this obviously constituted further resistance and obstruction of Anderson's attempt to carry out his duties as a law enforcement officer. It also created probable cause for the offense of fleeing or attempting to elude a peace officer under Idaho Code § 49-1404(1). *See Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004) (holding that arrest is constitutional if there is probable cause to believe any offense was committed, even if that offense was not invoked at the time of arrest). And the eventual dismissal of the charges in state court has no bearing on whether the arrest itself was legal. *De Anda v. City of Long Beach*, 7 F.3d 1418, 1422-3 (9th Cir. 1993).

In short, Carswell's conduct—captured on body camera and not factually disputed—unambiguously establishes probable cause. Carswell was arrested for obstructing and resisting Anderson's attempts to investigate, not for asking

Anderson to identify himself (which Anderson immediately did). For this reason, Carswell's false arrest claim fails, and summary judgment is granted to Anderson.

The existence of probable cause also dooms Carswell's malicious prosecution claim. To succeed on a malicious prosecution claim under § 1983, a plaintiff "must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (cleaned up). Because Anderson had probable cause, summary judgment must be granted, and it is unnecessary to examine the other elements at issue.

Finally, Anderson is entitled to qualified immunity on both claims. Qualified immunity protects state officials from liability unless a plaintiff proves "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). To meet the "clearly established" requirement, existing precedent must articulate the right with enough particularity "that the contours of the right are clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (internal quotation omitted). Carswell has not offered, and the Court has not found, any case indicating that it is unlawful to arrest an

individual who has refused to provide identification and attempted to drive away during a lawful traffic stop. To the contrary, as explained above, existing precedent makes clear that Anderson's actions were well within the contours of the Fourth Amendment. Therefore, qualified immunity applies and provides an independent basis for summary judgment on the false arrest and malicious prosecution claims.

### D. Excessive Force

Carswell next alleges that Officers Anderson, Hodges, Atkinson, and LeFave used excessive force by forcing him to the ground during his arrest, which caused him to sustain injuries. *Sec. Am. Compl.* at 7, Dkt. 16. Defendants argue for summary judgment because the video footage unambiguously shows that the force was reasonable, and because they are entitled to qualified immunity.

To assess whether an officer utilized an unreasonable degree of force, courts use an objective standard based on the totality of the circumstances. *Lombardo v. City of Saint Louis*, 141 S. Ct. 2239, 2241 (2021). Summary judgment in favor of an officer is appropriate if "if, after resolving all factual disputes in favor of the plaintiff, the court concludes that the force used was objectively reasonable under the circumstances." *Cortesluna v. Leon*, 979 F.3d 645, 651-52 (9th Cir. 2020) (internal quotations omitted), *rev'd on other grounds*, *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021). Considerations in this reasonableness analysis include "the

relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Lombardo*, 141 S. Ct. at 2241. Courts must view the facts from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The fact-dependent nature of excessive force claims makes summary judgment often inappropriate. Here, however, Carswell has not disputed Defendants' account of the events in his response to the summary judgment motion. His only factual allegations are in the complaint, and Federal Rule of Civil Procedure 56(e) states that "[w]hen a motion for summary judgment is made and supported, an adverse party may not rest upon the mere allegations or denials of his pleading." Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968). Moreover, the encounter was recorded from several different angles. Even if Carswell had provided an inconsistent statement of facts, the Court is not required to accept a party's characterizations that are "blatantly contradicted" by video. *Scott v. Harris*, 550 U.S. 372, 378-80 (2007).

Defendants' statement of facts (Dkt. 58-2) together with the body camera footage (Ex. A-D) unambiguously establishes that the officers' use of force was reasonable. Carswell was pulled from his car after he rolled up his window and shifted the car into "Drive." This was an attempt to flee, and it also created serious concerns for officer safety because Carswell could easily have turned the car into a deadly weapon. Officer Anderson's actions in forcing Carswell from the car and to the ground were eminently reasonable under the circumstances. It was necessary to immediately remove him from the vehicle and secure him so that he did not pose a danger, and Anderson used the minimum amount of force necessary to accomplish that goal. The officers also limited their use of force by quickly handcuffing Carswell, bringing him to his feet, and ensuring that he received prompt medical attention when he complained of pre-existing health problems. As far as severity of injuries, the video footage does not suggest that Carswell sustained any injuries at all, and Carswell has not pointed to any facts on the record to the contrary.[1]

In sum, the record unambiguously establishes that the use of force was

---

[1] Carswell has also continued to refuse to provide discovery relevant to his injuries and pre-existing health conditions. This non-compliance with the Court's discovery order (Dkt. 49) provides a separate basis for dismissing the excessive force claim as a sanction. *See* Fed. R. Civ. P. 37(b)(2)(A)(v) (authorizing sanctions up to and including dismissal). But, because Carswell's claim clearly fails on the merits, the Court need not analyze the propriety of sanctions.

MEMORANDUM DECISION AND ORDER - 17

reasonable under the circumstances. Further, Defendants are entitled to qualified immunity regardless of whether a constitutional violation occurred. There is no clearly established law prohibiting police officers from forcing a noncompliant, possibly dangerous arrestee to briefly lie face-down on the ground until his person is secured. To the contrary, the Ninth Circuit has emphasized that officers have significant discretion to use non-deadly force against an uncooperative suspects and "are not required to use the least intrusive degree of force possible." *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (2017).

For these reasons, summary judgment must be granted in favor of Defendants on Carswell's excessive force claim.

### E. Unlawful Seizure of Property

Carswell's final claim is for unlawful seizure of personal property against Anderson and Frasier. This appears to stem from the confiscation of Carswell's fictitious plate, which he describes as his "notice plate."

When contraband or evidence of a crime is in plain view, police officers may seize that evidence without a warrant. *Horton v. California*, 146 U.S. 128, 130 (1990). There is no obligation to returned seized contraband, and the items may be destroyed. *See United States v. Wright*, 49 F.4th 1221, 1226 (9th Cir. 2022).

In Idaho, it is unlawful to display or knowingly possess a fictitious license

plate. Idaho Code § 49-456(3). Carswell's fictitious plate was mounted on the truck in plain view. The officers therefore acted lawfully in seizing the plate, which was both evidence of the crime and contraband. And because it was unlawful for Carswell to possess the plate, officers have no obligation to return the object.

For this reason, Carswell's unlawful seizure claim fails as a matter of law. And regardless, the officers are entitled to qualify immunity because there is no clearly established law that notifies defendants that the confiscation of the illegal "notice plate" is constitutional violation. Summary judgment is therefore granted to Defendants.

## ORDER

**IT IS ORDERED that:**

1.    Plaintiff's Motion to Disqualify Judge (Dkt. 60) is **DENIED**.

2.    Defendants' Motion for Summary Judgement (Dkt. 58) is **GRANTED**.

DATED: December 2, 2024

B. Lynn Winmill
U.S. District Court Judge